UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


UNITED STATES OF AMERICA

v.                                    Case No. 8:19-CR-112-T-24AAS

JUAN SEBASTIN ROSERO CUABU
_____/

### SENTENCING MEMORANDUM

COMES NOW, the Defendant, JUAN SEBASTIN ROSERO CUABU, by and through his undersigned attorney, and hereby files this Sentencing Memorandum, in which he asks this Honorable Court to impose a sentence that is "sufficient, but not greater than necessary" to achieve the purposes of sentencing, pursuant to 18 U.S.C. § 3553(a). As grounds in support hereof, Mr. Rosero Cuabu states:

### Background

Mr. Rosero Cuabu was born in Tumaco, Columbia, on February 17, 1999. PSR ¶ 42. Mr. Rosero Cuabu grew up in extreme poverty. *Id*. His family remains mired in poverty, and lives in a dangerous section of Tumaco. PSR ¶ 44. Though his family wishes for safety, they cannot afford to move. *Id.* When he was young, his mother fell ill. Exh B. Due to her illness, Mr. Rosero Cuabu quit school in the

seventh grade to help out the family. Id. He worked hard to support the family, doing construction and then training to fish. *Id*. As a child he developed a heart condition that continues to plague him See Exh B. In spite of the hardships, the family remains close-knit. PSR ¶ 42.

Mr. Rosero Cuabu turned twenty years old less than a month before he departed on the trip that resulted in this case. His family faced great financial need, common in many of these kinds of cases. The difference here is the youth of Mr. Rosero Cuabu when he made the fateful decision to make the trip. He misses his family very much, and knows that they are suffering because of his poor choices. He is terrified of returning to Tumaco, afraid that the cartel will kill him. PSR ¶44.

**Procedural History and Guideline Calculations**

Mr. Rosero Cuabu is charged in the instant case with Conspiracy to Possess with the Intent to Distribute, and to Distribute, Five Kilograms or More of Cocaine While on Board a Vessel Subject to the Jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a), 70506(a) and (b), and 21 U.S.C. § 960(b)(1)(B)(ii). The probation officer correctly calculated Mr. Rosero Cuabu's advisory guideline range. PSR ¶¶22-33. With a total offense level of 35,

and a criminal history category I, Mr. Rosero Cuabu's guideline imprisonment range is 168 months – 210 months. PSR ¶56.

## Memorandum of Law

The defense would submit that an analysis of the 18 U.S.C. § 3553(a) factors support a finding that the advisory guideline imprisonment range in Mr. Rosero Cuabu's case is greater than necessary to accomplish the purposes of sentencing and that a variance in Mr. Rosero Cuabu's case would be appropriate.

**The Nature and Circumstances of the Offense and the History and Characteristics of Mr. Rosero Cuabu [18 U.S.C. § 3553(a)(1)]**.

The history and characteristics of Mr. Rosero Cuabu as well as the facts and circumstances of this case would justify a variance. Such an action is out of character for him and his family, as noted in Exhibit A. Such a decision was made by someone who was barely twenty years old. Youth and its attendant qualities – impulsivity, immaturity, and a failure to appreciate risk– are factors that the Supreme Court has identified as important in sentencing. It is now well established that teenage and young adult brains are different from more mature adult brains, and that their decision-making processes are less developed. Consequently, even when guilty of criminal offenses, young people are treated differently by the criminal justice system.

As the Supreme Court explained in *Roper v. Simmons*, 125 S. Ct. 1183, 1195-96 (2005), "today our society views juveniles, in the words Atkins used respecting the mentally retarded, as categorically less culpable than the average criminal . . . [a] lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young. These qualities often result in impetuous and ill-considered actions and decisions . . . . The susceptibility of juveniles to engage in immature and irresponsible behavior means 'their irresponsible conduct is not as morally reprehensible as that of an adult . . . [t]he relevance of youth as a mitigating factor derives from the fact that the signature qualities of youth are transient; as individuals mature, the impetuousness and recklessness that may dominate in younger years can subside." *Id*.

While in *Roper* the Supreme Court was considering defendants under the age of 18, all of the supporting literature applies equally to someone who is 20 years old, as brain development continues well into early adulthood. "Drawing the line at 18 years of age is subject . . . to the objections . . . against categorical rules." *Roper* at 574. "The qualities that distinguish juveniles from adults do not disappear when an individual turns 18." *Id*. While 18 may be the "point where society draws the line for many purposes between childhood and adulthood,"

scientific developments conclude that full adulthood is not biologically achieved until much later in life than age 18. *Id*.

The American Psychological Association explains that difference between adolescents and adults with respect to "risk taking, planning, inhibiting impulses, and generating alternatives" is connected to "adolescent behavioral immaturity: the human brain does not settle into its mature, adult form until after the adolescent years have passed and a person has entered into young adulthood." Brief for the American Psychological Association and the Missouri Case Psychological Association as Amici Curiae Supporting Respondent at 9, *Roper v. Simmons*, 543 U.S. 551 (2005) (hereinafter "*Roper* APA Brief"). *United States v. C.R.*, 792 F. Supp. 2d 343, 497 (E.D.N.Y. 2011). "One of the last areas of the brain to reach full maturity . . . is the part associated with regulating behavior, stifling impulses, assessing risks, and moral reasoning." Brief for the American Medical Association, et al., as Amici Curia Supporting Respondent at 16, *Roper v. Simmons*, 543 U.S. 551 (2005).

Indeed, "[m]uch of the developmental research suggests that the qualities highlighted by the Court [in *Roper*], described as psycho-social immaturity, continue to apply to individuals into their twenties, even mid-twenties or beyond." Emily Buss, *What the Law Should (and Should Not) Learn from Child*

*Development Research*, 38 Hofstra L. Rev. 13, 39 (2009). His youth and immaturity effected Mr. Cuabu's decision-making in the case.

**To Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense [18 U.S.C. §3553(a)(2)(A)]**

Mr. Rosero Cuabu understands the seriousness of his conduct and is remorseful for having committed this offense. Mr. Rosero Cuabu accepts that he must be punished; however, he believes that his life and circumstances are factors this Court should consider in fashioning an adequate and just punishment. Mr. Rosero Cuabu's lack of criminal history and his cooperation with law enforcement warrants a just and reasonable sentence below the recommended guideline range.

Mr. Rosero Cuabu is already thinking about ways he can make a better life for himself and his family. If he is sentenced to a prison term in the Bureau of Prisons, he hopes to learn to speak and write English, and obtain vocational training to improve his chances of success once he is returned to his country. PSR ¶ 52. For Mr. Rosero Cuabu, the punitive purpose of sentencing would be served by a sentence of approximately seven to eight years. Following the incarceration with five year of supervised release will also act as a deterrent.

## Conclusion

WHEREFORE, the Defendant, JUAN SEBASTIN ROSERO CUABU, respectfully moves this Court, based upon consideration of the factors enumerated in 18 U.S.C. § 3553(a) as well as further grounds to be argued at sentencing, to impose a sentence "sufficient but not greater than necessary" to achieve the purposes of sentencing.

DATED this 2nd day of October, 2019.

Respectfully submitted,

DONNA LEE ELM
FEDERAL DEFENDER

*/s/ Nicole Hardin*
Nicole Valdes Hardin
Florida Bar No.0026194
Assistant Federal Defender
400 North Tampa St, Suite 2700
Tampa, Florida 33602
Telephone: 813-228-2715
Fax:        813-228-2562
Email:   Nicole_Hardin@fd.org

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of October, 2019, a true and correct copy of the foregoing was furnished by using the CM/ECF system with the Clerk of the Court, which will send notice of the electronic filing to:

AUSA Nicholas DeRenzo

*/s/ Nicole Hardin*
Nicole V. Hardin
Assistant Federal Defender

# EXHIBIT A

*(Image at the top left corner with different sizes of hands forming a heart)*
*(Image at the top right corner with people grouped in a circle holding hands)*

# COMMUNITY ACTION COMMITTEE
# THE CORDIALIDAD NEIGHBORHOOD
### Legal Identity No. ▮ – March 20, 1974

June 8, 2019 - San Andrés de Tumaco

Honorable Judge:

Re: Certification

Cordial greetings. The following letter is to inform you that as President of the J.A.C. "Junta de Accion Comunal" Community Action Committee from the Cordialidad Neighborhood, I bear witness (testify) that Juan Sebastian Rosero Cuabu with CC No. ▮ is from the municipality of Tumaco, Narino. Also during the time he lived here, his behavior was impeccable as well as his parents, Aurelia Ines Cuabu Cortes with CC No. ▮ and his father, Servio Antonio Rosero Pena with CC No. ▮, both from Tumaco whom have two children and which one, the youngest, is mentioned above.
Very thankful.

Sincerely,

*/s/illegible signature*

EDISON MOISES CALDAS ORTIZ
President of the J.A.C.
Cel: ▮

Translator: Gladys Rosario, Staff Interpreter of the Federal Defenders Tampa Division
Date       : June 25, 2019




# JUNTA DE ACCION COMUNAL
## BARRIÓ LA CORDIALIDAD
Personería Jurídica No. ▮▮▮ del 20 de marzo de 1974

San Andrés de Tumaco, junio 08 de 2019.

**HONORABLE JUEZ**

**Ref:** Certificación

Cordial saludo

El presente es con el fin de manifestarle como presidente de la J.A.C. del Barrio La Cordialidad dar testimonio del joven **JUAN SEBASTIAN ROSERO CUABU**, identificado con C.C ▮▮▮ del municipio de Tumaco departamento de Nariño, que durante del tiempo que residió observo una buena conducta intachable al igual que sus padres **AURELIA INES CUABU CORTES** con C.C.No. ▮▮▮ de Tumaco y su padre **SERVIO ANTONIO ROSERO PEÑA**, con C.C.No. ▮▮▮ de Tumaco y sus otros 2 hijos en el cual el nombrado anteriormente es el menor.

De ustedes muy agradecido

Atentamente,

*[firma]*

**EDISON MOISES CALDAS ORTIZ**
Presidente J.A.C. Barrio La Cordialidad
Cel: ▮▮▮

# EXHIBIT B

June 8, 2019 - San Andres de Tumaco

Honorable Judge:

I, **AURELIA INES CUABU CORTES**, bearing CC No. ▮ and his father, **SERVIO ANTONIO ROSERO PENA**, bearing CC No. ▮ are the parents of **JUAN SEBASTIAN ROSERO CUABU**. We are a humble family of five (5) members: father, mother, and three (3) children where SEBASTIAN is the youngest of the three. He is young man who was born with a heart disease and was the favorite of the family, friends, and teachers where he attended elementary and middle school (until the 7th grade). JUAN SEBASTIAN is a very well-mannered and respectful young man who is well known and loved by the community of the Tumaco area where we live.

Due to health problems my wife encountered, my son quit school to help with house chores. Later he started working as a construction assistant and in fishing. Our son would go on fishing trips and, depending on the tasks, could be away for a week. Other times it was for 10 to 12 days. This is why we were confused and worried about this situation. If he had been fishing in the Tumaco area, he would have been a shipwreck survivor. This is what worried us since he did not return from this fishing trip.

Dear Judge, we humbly ask you in the name of God how our son appeared in the United States and was detained.

We appreciate in advance your attention.

Sincerely,

*/s/legible signature*  */s/illegible signature*

**AURELIA INES CUABU CORTES**   **SERVIO ANTONIO ROSERO PENA**
CC No. ▮                         CC No. ▮

Translator: Gladys Rosario, Staff Interpreter of the Federal Defenders Tampa Division
Date     : June 25, 2019

San Andrés de Tumaco, junio 08 de 2019

## HONORABLE JUEZ

Cordial saludo

**AURELIA INES CUABU CORTES** con C.C.No ▓▓▓▓▓▓▓ de Tumaco y su padre **SERVIO ANTONIO ROSERO PEÑA**, con C.C.No ▓▓▓▓▓▓▓ de Tumaco, somos los padres de **JUAN SEBASTIAN ROSERO CUABU**, somos una familia humilde conformada por 5 miembros, padre, madre y 3 hijos siendo SEBABSTIAN el ultimo y el menor de los 3 es un joven que nació con problemas del corazón por lo cual siempre fue el más consentido de la familia, los amigos y los profesores del colegio donde estudio la primaria y la secundaria hasta 7° de bachillerato JUAN SEBASTIAN es un joven muy amable y respetuoso por lo cual es muy conocido y querido por toda la comunidad de la zona de Tumaco donde vivimos, por razones de salud de mi esposa mi hijo dejo de estudiar para ayudar en el cuidado del papa con los quehaceres de la casa; después empezo a trabajar en ayudante de construcción y en la pesca; nuestro hijo se ausentaba cuando andaba de pesca, deauerdo a las faenas de pesca que a veces duraba dentro de una semana, otras veces de 10 a 12 dias, por eso estamos confundidos y preocupados por esa situación, si el andaba en la zona de Tumaco de pesca debería aparecer como naufragos que era lo que temíamos por lo que no llegaba de la faena de pesca en la que andaba.

Señor Juez le pedimos humildemente en nombre de Dios y la verdad nos haga saber como nuestro hijo aparece en una ciudad de los estados Unidos y en calidad de detenido.

De ante mano le agradecemos su atención prestada

Atentamente,

*AuRelia Ines Cuab.*  
**AURELIA INES CUABU CORTES**  
C.C.No. ▓▓▓▓▓▓▓ de Tumaco

**SERVIO ANTONIO ROSERO PEÑA**  
C.C.No ▓▓▓▓▓▓▓ de Tumaco